## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIAM D. HAMPTON, | :: | CIVIL ACTION NO. |
| Inmate # BOP Reg. 26034-044, | :: | 1:09-CV-00854-RWS |
| Movant, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| FEDERAL CORRECTIONAL | :: | PRISONER CIVIL RIGHTS |
| INSTITUTION, | :: | ACTION (BIVENS) |
| WARDEN GRAYER, et al., | :: | 28 U.S.C. § 1331 |
| Respondents. | :: | |

## ORDER

On March 3, 2009, Mr. Hampton filed a Motion to Compel and Cease & Desist

Pursuant to 28 U.S.C. § 2241 (Doc. 1), which pleading the Clerk docketed in <u>Hampton</u>

<u>v. Federal Correctional Institution</u>, No. 1:07-CV-2290, a case that had been closed

since October 1, 2007. The Court then ordered that motion to be docketed as the

complaint in a new civil action (this one), and further ordered Mr. Hampton to file an

amended complaint and financial affidavit for this newly opened case. Instead of

complying with the Court's Order, Mr. Hampton filed a Motion to Cause Movant's

Motion to Remain as Submitted and Docketed as 28 U.S.C. § 2241 (Doc. 2); a Motion

to Amend 28 U.S.C. § 2241 (Doc. 3); a Motion for Discovery (Doc. 4); a Motion to

Petition for Docketing Statement (Doc. 5); and a Motion to Compel (Doc. 6).

# I. Procedural History

In his original motion to compel, which was docketed in this Court on March 3, 2009, Mr. Hampton complained that he had been in the Special Housing Unit (SHU) at the Federal Correctional Institution in Atlanta, Georgia (FCI-Atlanta) since on or about December 16, 2008, during which time he had been denied access to his "personal legal paperwork" and to the law library. (Mot. [1] at 1-3.) Mr. Hampton also complained about the lack of ladder access to the top bunks and the lack of emergency buttons in the SHU's inmate cells; the denial of his request for toilet paper on February 26, 2009, and the subsequent search of his cell to ascertain his existing stock of paper; the failure of an officer to deliver three "copouts" on February 25, 2009; a unit counselor's allegedly insulting comment on February 7, 2009, about Mr. Hampton's "girlfriend"; the "lack of clothes, entertainment, exercise, cleaning supplies, legal materials, legal assistance, toiletries, and regular commissary access" for the SHU's inmates; the failure of prison officials to enforce the ninety-day limit on investigatory confinement, which applies to all but those cases involving "extreme circumstances" justifying an additional ninety days in the SHU; the leaking showers and frequent flooding problems at the SHU; the lack of regular distribution of supplies to clean the inmate cells; the infrequent distribution of clean clothing to SHU inmates, which

2

Mr. Hampton asserts should be done more than once per week, to avoid body odor and festering bacteria; the growth of mold and bacteria in some of the SHU's cells, including, ostensibly, Mr. Hampton's own; the difficulty in obtaining writing paper and basic toiletries on a regular basis; and the insufficient space for each SHU inmate, based on the Bureau of Prisons' (BOP's) own standards. (Id. 3-6.)

In his motion to convert his original motion into a § 2241 habeas petition, Mr. Hampton claims that he is aware of the difference between a habeas and a civil rights action, but argues that his claims are habeas ones because he seeks "to force Warden Grayer to correct unhealthy, unsafe, and deadly conditions rampant in [the] Atlanta Special Housing Unit before a death or serious injury, that would then warrant a 28 U.S.C. § 1983 Bivens action, does occur." (Mot. [2] at 1.) Aside from decrying this Court's attempt to "price [him] out of the market" by recharacterizing his habeas petition as a civil action–which he admits is "an issue to be argued at a different date"–Mr. Hampton lists five issues that he claims are now before the Court: (1) that this is a 28 U.S.C. § 2241 complaint, not a civil action; (2) that "this Court has not conveyed the specific cost to [him] yet"; (3) that he exercised "due diligence" in attempting to exhaust his administrative remedies; (4) that thirty days for him to respond to the Court's previous Order is unreasonable given his negative rapport with

the unit team in the SHU; and (5) that he is currently in "imminent" transfer status, although he intends to pursue these matters "regardless of his destination." (Id. at 2-3.)

## II. Availability of Habeas Relief for Mr. Hampton's Claims

This Court has jurisdiction to issue writs of habeas corpus to federal prisoners who are "in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal prisoner may use a § 2241 petition to challenge the manner of execution of his sentence when his challenge implicates the fact or duration of that sentence. See, e.g., Bishop v. Reno, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (stating that BOP's "administration of service credits . . . involves the execution rather than the imposition of sentence; thus, this function of BOP is a matter for habeas corpus review in district court"). In general, however, the proper vehicle for a prisoner to challenge his conditions of confinement is a civil rights, rather than a habeas corpus, action. See McKinnis v. Mosely, 693 F.2d 1054, 1056-57 (11th Cir. 1982) (citing Johnson v . Hardy, 601 F.2d 172, 174 (5th Cir. 1979), for proposition that "any challenge to the *fact* or *duration* of a prisoner's confinement is properly treated as a habeas corpus matter, whereas challenges to *conditions* of confinement may proceed" as civil rights actions, and concluding that prisoner challenge to "summary suspension of his wife's visiting rights" was properly brought as civil rights

4

action). See also Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999) (noting that term

"'conditions of confinement' . . . . quite simply encompasses all conditions under

which a prisoner is confined for his term of imprisonment," including "terms of

disciplinary or administrative segregation such as keeplock or solitary confinement,

as well as more general conditions affecting a prisoner's quality of life," and stating

that "any deprivation that does not affect the fact or duration of a prisoner's overall

confinement is necessarily a condition of that confinement").

In this action, Mr. Hampton seeks to challenge the conditions of his confinement

in the SHU, not the fact or duration of that confinement. Therefore, Mr. Hampton may

not proceed under the federal habeas statutes. See Richmond v. Scibana, 387 F.3d 602,

605-06 (7th Cir. 2004) (concluding that federal prisoner could not proceed under §

2241 in action that did not challenge fact or duration of his confinement). See also

Hutcherson v. Riley, 468 F.3d 750, 754 (11th Cir. 2006) (stating that federal habeas

corpus petition and civil rights action "are mutually exclusive" avenues of relief, and

holding that challenge to validity of conviction and sentence could not be brought as

civil rights claim because "if a claim can be raised in a federal habeas petition, that

same claim cannot be raised in a separate § 1983 civil rights action"). Accord Thomas

v. McDonough, 228 Fed. Appx. 931, 931-32 (11th Cir. 2007) (citing Hutcherson for

5

proposition that habeas petition and civil rights action "are mutually exclusive," and holding that challenge to parole eligibility procedure could not be brought in habeas petition because it is "cognizable under § 1983").

Moreover, the Court takes judicial notice that Mr. Hampton has been transferred to the Federal Correctional Institution in Three Rivers, Texas. See www.bop.gov at "Inmate Locator" for Register Number 26034-044. As noted above, Mr. Hampton seeks only injunctive relief in this action, i.e., he seeks "to force Warden Grayer to correct unhealthy, unsafe, and deadly conditions rampant in [the] Atlanta Special Housing Unit." (Mot. [2] at 1.) However, once a prisoner has been transferred, injunctive relief with respect to his confinement at his former place of incarceration is no longer available. See McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984) (stating that "[t]he general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief").[1] In addition,

---

[1] Accordingly, it is irrelevant that the Eleventh Circuit has, on at least one occasion, entertained a habeas corpus challenge to allegedly unconstitutional conditions of confinement. See Gomez v. United States, 899 F.2d 1124, 1126-27 (11th Cir. 1990) (overturning federal prisoner's release on bail–which district court granted "pending court determination that the Bureau of Prisons (BOP) has the ability to treat AIDS prisoners within its facilities"–in connection with § 2241 habeas challenge to allegedly inadequate medical care; citing cases for proposition that "[s]ome authorities do not permit such claims to be asserted in a habeas corpus action"; and noting that Government did not raise issue as to whether habeas was proper vehicle for prisoner's

6

to the extent that Mr. Hampton might seek to recover money damages in a habeas corpus action, now that injunctive and declaratory relief are no longer available, he may not do so. See Gwin v. Snow, 870 F.2d 616, 622 (11th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475, 494 (1973), for proposition that "[i]n the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy").

In short, because Mr. Hampton has been transferred from FCI-Atlanta and the SHU located there, he may not obtain injunctive relief against the named Defendants with respect to the conditions at the SHU, regardless of whether this action is properly brought via habeas corpus or under Bivens. Accordingly, Mr. Hampton's claims, as currently presented, are moot. He may obtain only monetary relief from the FCI-Atlanta Defendants. However, because Mr. Hampton insists on maintaining this action via habeas corpus, in which monetary relief is not available, this action is moot

_____

claims). It is also irrelevant that "it is proper for a district court to treat a petition for release from administrative segregation as a petition for a writ of habeas corpus because such release falls into the category of [the] fact or duration of . . . physical imprisonment," Medberry v. Crosby, 351 F.3d 1049, 1053 (11th Cir. 2003) (internal quotations omitted), because any challenge to the fact or duration of Petitioner's confinement at the SHU has been mooted by his release from that confinement and transfer to another federal correctional facility. See id. (stating that when "a prisoner has completed an imposed term of administrative segregation before he files his petition, . . . the petition [is] moot when filed and cannot be revived by collateral consequences") (internal quotations omitted).

AO 72A
(Rev.8/82)

in its entirety. Accordingly, all of Mr. Hampton's remaining motions, including his motion to compel Warden Grayer to "single cell" him at the SHU (Mot. to Compel [6] at 1) and his motion to amend his habeas petition "to reflect the addition of one Respondent" (Mot. to Amend [3] at 1), are moot as well.

## IV.  Conclusion

For the foregoing reasons, Mr. Hampton's Motion to Cause Movant's Motion to Remain as Submitted and Docketed as 28 U.S.C. § 2241 (Doc. 2) is **DENIED**; his Motion to Amend 28 U.S.C. § 2241 (Doc. 3), Motion for Discovery (Doc. 4), Motion to Petition for Docketing Statement (Doc. 5), and Motion to Compel (Doc. 6) are **DENIED AS MOOT**; and this action is **DISMISSED**.

**IT IS SO ORDERED** this __18th__ day of June, 2009.


_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)